1  DANIEL S. KAHN
   Acting Chief, Fraud Section
2  BLAKE GOEBEL
   Trial Attorney
3  U.S. Department of Justice
   Criminal Division, Fraud Section
4  1400 New York Ave. NW
   Washington, D.C., 20005
5  Tel: 202.616.5010
   Blake.Goebel@usdoj.gov
6
   NICHOLAS A. TRUTANICH
7  United States Attorney
   District of Nevada
8  Nevada Bar Number 13644
   JESSICA OLIVA
9  Assistant United States Attorney
   501 Las Vegas Blvd. South, Suite 1100
10 Las Vegas, Nevada  89101
   (702) 388-6268
11 Jessica.Oliva@usdoj.gov

12 *Attorneys for the United States*

                  FILED        RECEIVED
                  ENTERED      SERVED ON
                       COUNSEL/PARTIES OF RECORD

                       OCT 2 1 2020

                  CLERK US DISTRICT COURT
                     DISTRICT OF NEVADA
              BY:_____ DEPUTY

13              **UNITED STATES DISTRICT COURT**
                  **DISTRICT OF NEVADA**
14

15 UNITED STATES OF AMERICA,          **CRIMINAL INDICTMENT**

            Plaintiff,                Case No. 2:20-cr- *286*
16
                                      **VIOLATIONS:**
17          v.

18 KAREN CHAPON,                      Bank Fraud
        aka "Karen Hannafious,"       (18 U.S.C. § 1344(2));
19
            Defendant.                False Statements to a Financial
                                      Institution
20                                    (18 U.S.C. § 1014); and

21                                    Unlawful Monetary Transaction
                                      (18 U.S.C. § 1957)
22
                                      **FORFEITURE ALLEGATION**
23

24

**THE GRAND JURY CHARGES THAT:**

<u>Background</u>

At all times relevant to the Indictment, unless otherwise stated:

1. Defendant Karen CHAPON, also known by her maiden name "Karen Hannafious," was a United States citizen, residing in Las Vegas, Nevada and San Diego, California.

2. Automobile Dealership A was an automobile dealership located in Las Vegas, Nevada.

*Paycheck Protection Program*

3. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and is designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

4. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the

1    small business is eligible to receive under the PPP. In addition, businesses applying for a

2    PPP loan must provide documentation showing their payroll expenses.

3        5.    A participating financial institution (the lender) must process a PPP loan

4    application. If the lender approves a PPP loan application, it funds the PPP loan using its

5    own monies, which the Small Business Administration ("SBA") guarantees 100%. The

6    lender transmits information to the SBA in the course of processing the loan data from the

7    application, including information about the borrower, the total amount of the loan, and the

8    listed number of employees.

9        6.    The business receiving the PPP loan proceeds must spend the funds on certain

10   permissible expenses: payroll costs, interest on mortgages, rent, and utilities. The PPP

11   allows the interest and principal on the PPP loan to be entirely forgiven if the business

12   spends the loan proceeds on these expense items within a designated period of time and uses

13   a specified portion of the PPP loan proceeds on payroll expenses.

14   _Relevant Financial Institutions_

15       7.    Bank 1 was a federally insured financial institution. It was an SBA approved

16   lender and participated as a PPP lender to small businesses.

17       8.    Bank 2 was a federally insured financial institution. It was an SBA approved

18   lender, participated as a PPP lender to small businesses, and accepted loan applications

19   directly, as well as through online portals that allowed borrowers to submit a single

20   application to access loans from a variety of different lenders.

21       9.    Bank 3 was a federally insured financial institution. It was an SBA approved

22   lender, participated as a PPP lender to small businesses, and accepted loan applications

23   directly, as well as through online portals that allowed borrowers to submit a single

24   application to access loans from a variety of different lenders.

1

## The Scheme to Defraud

2    10.    Beginning in or around April 2020 and continuing until in or around July

3 2020, CHAPON knowingly devised, intended to devise, and participated in a scheme and

4 artifice to defraud the SBA, Bank 1, Bank 2, and Bank 3, and to obtain money and property

5 by means of materially false and fraudulent pretenses, representations, and promises.

6    11.    As further described below, CHAPON, through corporate entities Heavenly

7 Tahoe Properties, Desert Sun Events, and Tahoe Weddings and Events, submitted at least

8 six false and fraudulent applications to three different financial institutions to obtain loans

9 through the Paycheck Protection Program (PPP) guaranteed by the Small Business

10 Administration (SBA).

11

## Purpose of the Scheme to Defraud

12    12.    It was the purpose of the scheme for CHAPON to unjustly enrich herself by

13 fraudulently obtaining PPP loan proceeds.

14

## Manner and Means of the Scheme to Defraud

15 *Heavenly Tahoe Properties Bank 2 Loan*

16    13.    As part of the scheme to defraud, on or about May 19, 2020, CHAPON

17 submitted a signed PPP Borrower Application Form (SBA Form 2483) in support of a

18 $537,500 PPP loan for Heavenly Tahoe Properties from Bank 2.  CHAPON made the

19 application in the name of "Karen Hannafious" through an online portal, and Bank 2 issued

20 the loan.

21    14.    On her signed PPP Borrower Application Form, she made the following

22 misrepresentations, among others: (1) CHAPON falsely represented that Heavenly Tahoe

23 Properties' average monthly payroll expenses were $215,000 and that it had 18 employees,

24 when in fact it had no payroll expenses or employees; (2) CHAPON falsely certified that

1  Heavenly Tahoe Properties was in operation on February 15, 2020, and had employees for

2  whom it paid salaries and payroll taxes or paid independent contractors, when in fact it was

3  not in operation and did not pay employees or independent contractors; (3) CHAPON

4  falsely represented that she had not pleaded guilty, been convicted, or been placed on any

5  form of parole or probation for any felony within the prior five years, when in fact

6  CHAPON pled guilty to several felony fraud offenses in Nevada state court in 2016 and

7  remained on parole until January 2020; and (4) CHAPON falsely certified that the loan

8  funds would be used to retain workers and maintain payroll or make mortgage interest

9  payments, lease payments, and utility payments, in accordance with PPP rules, when in fact

10  CHAPON intended to divert the proceeds for her personal benefit.

11      15.    Additionally, to support the requested loan amount, CHAPON submitted a

12  fraudulent IRS Form 940 Federal Unemployment Tax Return (IRS Form 940) for 2019 for

13  Heavenly Tahoe Properties, which falsely stated that Heavenly Tahoe Properties made over

14  $2.4 million in employee payments in 2019.

15      16.    On or about May 19, 2020, Bank 2 approved the PPP loan for Heavenly

16  Tahoe Properties and distributed the $537,500 in loan proceeds to a bank account controlled

17  by CHAPON.

18  *Additional PPP Loan Applications*

19      17.    As further part of the scheme, CHAPON, including through her maiden

20  name "Karen Hannafious," applied for at least five additional PPP loans on behalf of three

21  different entities from three different lending institutions, as identified below.  CHAPON

22  obtained loan proceeds for three of these PPP loan applications.  The remaining two

23  applications were denied—one of which was denied before CHAPON requested a specific

24  loan amount:

| Business Name | Lending Bank | Loan Amount Applied For | Amount Disbursed | Approximate Date of Loan Application |
|---|---|---|---|---|
| Desert Sun Events | Bank 1 | $19,715 | $19,715 | April 22, 2020 |
| Desert Sun Events | Bank 2 | $19,716 | $19,716 | May 5, 2020 |
| Tahoe Weddings and Events | Bank 3 | $20,000 | $20,000 | May 6, 2020 |
| Heavenly Tahoe Properties | Bank 3 | $500,000 | $0 | May 15, 2020 |
| Tahoe Weddings and Events | Bank 2 | -- | $0 | June 30, 2020 |

18.     As further part of the scheme, in support of each of the additional five PPP loan applications CHAPON made the following material misrepresentations, among others: (1) CHAPON falsely represented the average monthly payroll expenses for the entity applying for the loan to justify the loan amounts; and (2) CHAPON submitted fraudulent 2019 IRS Forms for the entity applying for the loan or for herself individually that supported the false average monthly payroll expenses claimed on each loan application.

19.     As further part of the scheme, CHAPON made the following material misrepresentations, among others, in connection with certain of the additional five PPP loan applications: (1) CHAPON falsely represented that she had not pleaded guilty, been convicted, or been placed on parole for any felony in the prior five years; (2) CHAPON submitted falsified bank account statements to falsely make it appear that the PPP loan funds were being disbursed into a bank account controlled by the entity applying for the loan; (3) CHAPON falsely certified that the entity applying for the PPP loan would only use the loan proceeds to retain workers and maintain payroll or to make other payments as specified under the Paycheck Protection Program Rule, when in fact CHAPON intended to divert the proceeds for personal benefit; (4) CHAPON falsely certified that the entity applying for the PPP loan was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, when in fact it was not in operation and did not make salary or payroll payments; and (5) CHAPON falsely

1 | represented additional information about the entity applying for the loan, including the

2 | number of its employees and its annual revenue.

3 |      20.     Additionally, as further part of the scheme, CHAPON falsely represented on

4 | the Desert Sun Events Bank 2 application that Desert Sun Events "has not and will not

5 | receive" another PPP loan between February 15, 2020 and December 31, 2020.  In fact,

6 | CHAPON received the proceeds of the Desert Sun Events Bank 1 loan in a bank account

7 | she controlled approximately one day before CHAPON submitted the application for the

8 | Desert Sun Events Bank 2 loan.

9 |      21.     CHAPON directed that the PPP loan proceeds be disbursed to bank accounts

10 | under her control, and diverted the funds for her personal use.

11 |      22.     Finally, on or about July 23, 2020, CHAPON made copies of a bank account

12 | statement that was falsified to make it appear that the bank account was held in the name of

13 | CHAPON doing business as (d/b/a) Tahoe Weddings and Events, and not just CHAPON

14 | individually.

## COUNTS ONE THROUGH FOUR
(Bank Fraud)
(18 U.S.C. § 1344(2))

23.     The allegations in paragraphs 1 through 22 are re-alleged and incorporated as if fully set forth herein.

24.     From in or around April 2020 through in or around July 2020, in the State and Federal District of Nevada, and elsewhere,

**KAREN CHAPON, aka "Karen Hannafious,"**

defendant herein, knowingly devised, intended to devise, and participated in the above-described scheme and artifice to obtain the moneys, funds, credits, assets, securities, and property owned by and under the custody and control of Bank 1, Bank 2, and Bank 3 by means of materially false and fraudulent pretenses, representations, and promises.

25.     On or about the dates identified below, in the State and Federal District of Nevada, and elsewhere,

**KAREN CHAPON, aka "Karen Hannafious,"**

Defendant herein, knowingly executed the above-described scheme as described below, each execution constituting a separate count.

| COUNT | DATE | DESCRIPTION OF EXECUTION |
| --- | --- | --- |
| ONE | April 22, 2020 | Submission to Bank 1 of PPP loan application in the name of Desert Sun Events seeking $19,715 |
| TWO | May 5, 2020 | Submission to Bank 2 of PPP loan application in the name of Desert Sun Events seeking $19,716 |
| THREE | May 6, 2020 | Submission to Bank 3 of PPP loan application in the name of Tahoe Weddings and Events seeking $20,000 |
| FOUR | May 19, 2020 | Submission to Bank 2 of PPP loan application in the name of Heavenly Tahoe Properties seeking $537,500 |

All in violation of Title 18, United States Code, Section 1344(2).

## COUNTS FIVE THROUGH SIX
(False Statement to a Financial Institution)
(18 U.S.C. § 1014)

26.    The allegations in paragraphs 1 through 22 are re-alleged and incorporated as if fully set forth herein.

27.    On or about the dates identified below, in the State and Federal District of Nevada, and elsewhere,

**KAREN CHAPON, aka "Karen Hannafious,"**

defendant herein, knowingly made the false statements and reports described below for the purposes of influencing the action of a financial institution, whose accounts were insured by the Federal Deposit Insurance Corporation, upon an application, agreement, and loan, each false statement constituting a separate count:

| COUNT | DATE | DESCRIPTION OF FALSE STATEMENT |
|---|---|---|
| FIVE | May 15, 2020 | Fraudulent 2019 IRS Form 940 Federal Unemployment Tax Return (IRS Form 940) CHAPON submitted in support of her loan application on behalf of Heavenly Tahoe Properties to Bank 3 containing false statement about total payments made to employees. |
| SIX | June 30, 2020 | Fraudulent 2019 IRS Form 940 Federal Unemployment Tax Return (IRS Form 940) CHAPON submitted in support of her loan application on behalf of Tahoe Weddings and Events to Bank 2 containing false statement about total payments made to employees. |

All in violation of Title 18 United States Code, Section 1014.

9

**COUNT SEVEN**
(Unlawful Monetary Transaction)
(18 U.S.C. § 1957)

28.     The allegations in paragraphs 1 through 25 are re-alleged and incorporated as if fully set forth herein.

29.     On or about June 5, 2020, in the State and Federal District of Nevada and elsewhere,

**KAREN CHAPON, aka "Karen Hannafious,"**

defendant herein, knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000 that was in fact derived from specified unlawful activity, that is, bank fraud, in violation of Title 18, United States Code, Section 1344, as alleged in Counts One through Four, to wit: CHAPON caused a cashier's check to be issued by Bank 1 to Automobile Dealership A in the amount of $49,987.73 for the purchase of a Mercedes-Benz Sport Utility Vehicle ("SUV"), all in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATION ONE
(Bank Fraud)

1.    The allegations contained in Counts One through Four of this Criminal Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(2)(A).

2.    Upon conviction of any of the felony offenses charged in Counts One through Four of this Criminal Indictment,

**KAREN CHAPON, aka "Karen Hannafious,"**

defendant herein, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1344, or a conspiracy to commit such offense:

defendant herein, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1344, a specified unlawful activity as defined in 18 U.S.C §§ 1956(c)(7)(A) and 1961(1)(B), or a conspiracy to commit such offense:

defendant herein, shall forfeit to the United States of America, any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of violations of 18 U.S.C. § 1344, or a conspiracy to violate such offense, affecting a financial institution:

1.    an in personam criminal forfeiture money judgment including, but not limited to, at least $596,931;

2.    $504,385.19; and

3.    a gray 2018 Mercedes Benz G63 AMG sports utility vehicle with vehicle

11

1          identification number (VIN) WDCYC7DH6JX291626

2   (all of which constitutes property).

3        3.     If any property being subject to forfeiture pursuant to 18 U.S.C. §

4   981(a)(1)(C) with 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(2)(A), as a result of any act or

5   omission of the defendant -

6            a.     cannot be located upon the exercise of due diligence;

7            b.     has been transferred or sold to, or deposited with, a third party;

8            c.     has been placed beyond the jurisdiction of the court;

9            d.     has been substantially diminished in value; or

10           e.     has been commingled with other property which cannot be divided

11                without difficulty;

12   it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), to seek

13   forfeiture of any other property of the defendant for the property listed above.

14        All pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C. §

15   982(a)(2)(A); 18 U.S.C. § 1344; and 21 U.S.C. § 853(p).

16                **FORFEITURE ALLEGATION TWO**
                 (Engaging in Transactions in Unlawful Proceeds)

17

18        1.     The allegations contained in Count Seven of this Criminal Indictment are

19   hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture

20   pursuant to 18 U.S.C. § 981(a)(1)(A) with 28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C)

21   with 28 U.S.C. § 2461(c); and 18 U.S.C. § 982(a)(1).

22        2.     Upon conviction of the felony offense charged in Count Seven of this

23   Criminal Indictment,

24        **KAREN CHAPON, aka "Karen Hannafious,"**

1  defendant herein, shall forfeit to the United States of America, any property, real or

2  personal, involved in transactions or attempted transactions in violation of 18 U.S.C. §

3  1957, or any property traceable to such property:

4          defendant herein, shall forfeit to the United States of America, any property, real or

5  personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C.

6  § 1957, a specified unlawful activity as defined in 18 U.S.C §§ 1956(c)(7)(A) and

7  1961(1)(B), or a conspiracy to commit such offense:

8          defendant herein, shall forfeit to the United States of America, any property, real or

9  personal, involved in violations of 18 U.S.C. § 1957, or any property traceable to such

10  property:

11      1.  an in personam criminal forfeiture money judgment including, but not

12         limited to, at least $49,987.73; and

13      2.  a gray 2018 Mercedes Benz G63 AMG sports utility vehicle with vehicle

14         identification number (VIN) WDCYC7DH6JX291626

15  (all of which constitutes property).

16      3.  If any property being subject to forfeiture pursuant to 18 U.S.C. §

17  981(a)(1)(A) with 28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c);

18  and 18 U.S.C. § 982(a)(1), as a result of any act or omission of the defendant -

19      a.  cannot be located upon the exercise of due diligence;

20      b.  has been transferred or sold to, or deposited with, a third party;

21      c.  has been placed beyond the jurisdiction of the court;

22      d.  has been substantially diminished in value; or

23      e.  has been commingled with other property which cannot be divided

24         without difficulty;

1   it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), to seek

2   forfeiture of any other property of the defendant for the property listed above.

3         All pursuant to 18 U.S.C. § 981(a)(1)(A) with 28 U.S.C. § 2461(c); 18 U.S.C. §

4   981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(1); 18 U.S.C. § 1957; and 21

5   U.S.C. § 853(p).

6         **DATED** this 21st day of October, 2020.

7         **A TRUE BILL**:

8

9                                     /S/
                            FOREPERSON OF THE GRAND JURY

10   DANIEL S. KAHN
    Acting Chief, Fraud Section

11

12

  BLAKE C. GOEBEL

13   Trial Attorney

14

15   NICHOLAS A. TRUTANICH
    United States Attorney

16

17

  JESSICA OLIVA

18   Assistant United States Attorney

19

20

21

22

23

24